## LOIS E. SCOTT, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 102594.   Promulgated September 23, 1943.

*Thomas Howell Scott, Esq.*, for the petitioner.
*J. Marvin Kelley, Esq.*, for the respondent.

### OPINION.

DISNEY, *Judge:* This case involves income taxes for the year 1936. The income tax return was filed on April 15, 1937.   The only income reported was $12,721.25 under the heading of "Dividends."   No explanation was given.   Taxes were paid as follows:

| | |
|---|---|
| Apr. 16, 1937 | $178.98 |
| June 16, 1937 | 178.25 |
| Sept. 15, 1937 | 178.00 |
| Dec. 15, 1937 | 178.00 |

Under date of January 17, 1940, the petitioner and the Commissioner of Internal Revenue executed a consent fixing the period of limitation upon assessment of income and profits taxes as expiring on June 30, 1941, unless notice of deficiency should be mailed prior to that date.   On February 13, 1940, a notice of deficiency was mailed in which a deficiency of $76.31 was determined, after allowance of the above payments totaling $712.34, upon a liability determined in the amount of $788.65.   On May 13, 1940, petition was filed with the Board of Tax Appeals, alleging that the taxes in controversy are income taxes for the calendar year 1936, that the deficiency determined is $76.31, and that the entire amount is in controversy.   The allegation of error was as follows:

In determining the taxable net income of the petitioner for the calendar year 1936, the Commissioner arbitrarily increased the value of 555 shares of Series "B" First Preferred stock of the Heywood-Wakefield Company, Gardner, Massachusetts, reported in return filed as a stock dividend equivalent to a cash dividend. The Commissioner contends the stock received in 1936 had a market value of $21.25 per share and that no part of said dividend represented a return of capital.

Among the recitations of the facts upon which the petitioner relied, it is alleged that the petitioner had in her return included in dividend income reported a stock dividend of 555 shares of series B first preferred stock of Heywood-Wakefield Co., Gardner, Massachusetts, valued at $11,100, or equal to $20 per share; that the stock dividends were issued under a plan of recapitalization, providing for settlement of dividend arrearages on second preferred stock of $50.75 per share by the payment of 75¢ in cash and the issuance of series B preferred new stock to the holders of second preferred stock on December 15, 1936; that:

The issue of the shares of Series "B" First Preferred stock were handled on the books of the company as dividends payable in stock. The company had no earned surplus on December 15, 1936, and consequently the dividends paid in stock were dividends paid from capital and not taxable;

that the petitioner on December 28, 1936, owned 555 shares of second preferred stock of the company, which had at that time accumulated unpaid dividends of $50.75 per share, and that on that date petitioner, in accordance with the plan of recapitalization, accepted 555 shares of series B preferred stock and 75¢ in cash as a credit on accumulated dividends; that:

\* \* \* Since the exchange of the Second Preferred stock for Series "B" First Preferred stock has been held by the Commissioner to be non-taxable exchange, it is our contention that the shares of Series "B" received as a credit on accumulated unpaid dividends added nothing of value to what the shareholder had immediately before she accepted said Series "B" First Preferred stock and gave her no additional right or claim in or to the assets of said corporation, and for said reason said Series "B" First Preferred stock received by said shareholder was non-taxable.

The respondent's answer denied the allegations of error and all other allegations, except that it was admitted that petitioner on December 28, 1936, owned 555 shares of second preferred stock of Heywood-Wakefield Co., which had accumulated unpaid dividends at that time of $50.75 per share.

On May 10, 1943, the day before the trial, petitioner, pursuant to permission granted, filed her amended petition, alleging in substance that in her original petition she had alleged the receipt of 555 shares of series B first preferred stock of Heywood-Wakefield Co. as a nontaxable dividend; that notwithstanding that allegation, she had through oversight neglected to pray for a redetermination of her tax liability and for a refund; that therefore she prays that her original petition be amended to include a prayer for a redetermination of her tax liability and a prayer for refund on the taxes paid by her on the stock dividend. Denial of each such allegation was filed by the respondent. At the trial, on May 11, 1943, counsel for the respondent announced: "I would like also to confess error, as alleged in the peti-

tion, and agree that the Court may enter an order of no deficiency." We therefore find that there is no deficiency in tax. It was further agreed that the stock in this case is identical with the stock involved in the case of *Morainville* v. *Commissioner*, 135 Fed. (2d) 201 (wherein it is held that issuance of stock for accrued dividends is not a taxable dividend) ; also, further, that the cash dividend received by petitioner on the 555 shares of stock during the taxable year in the amount of $416.25 was taxable to the petitioner. It was further stated: "the only question your Honor will be called on to determine in this case is whether under the facts the Petitioner is entitled to a claim for refund, and that involves the question of whether the statute has barred his claim."

Our question is, therefore, whether the amended petitioned filed on May 10, 1943, is sufficient to constitute a timely application for findings of overpayment. Since the payments were made upon April 16, June 16, September 15, and December 15, all in 1937, it is apparent that all the payments, except the first, were made within three years prior to the filing of the original petition herein on May 13, 1940, under the provisions of section 322 (d) of the Revenue Act of 1936.[1] After consideration of the authorities on this question, we come to the conclusion that the statute of limitation has not run as to payments made within three years of filing of the original petition; and that petitioner made overpayment of the taxes to the extent paid within such three years. This depends upon whether the petitioner first stated a cause of action for a finding of overpayment in the amended petition filed on May 10, 1943 (at which date of course the three-year period had long since expired), or whether she set forth such cause of action in the original petition on May 13, 1940.

It is tue that in the original petition there was no prayer for a finding of overpayment or for a refund on the taxes paid by her on the stock dividend involved. This is indeed admitted in the amended petition, for therein it is recited that through an oversight the petitioner originally neglected to pray for a redetermination of her tax liability and for a refund. However, the rule is well established, in connection with the general question, as to what pleading is required to toll the statute of limitations, that if a cause of action is stated in the original declaration, the prayer for relief may be later amended

---

[1] SEC. 322. REFUNDS AND CREDITS.

\* \* \* \* \* \* \*

(d) OVERPAYMENT FOUND BY BOARD.—If the Board finds that there is no deficiency and further finds that the taxpayer has made an overpayment of tax in respect of the taxable year in respect of which the Commissioner determined the deficiency, the Board shall have jurisdiction to determine the amount of such overpayment, and such amount shall, when the decision of the Board has become final, be credited or refunded to the taxpayer. No such credit or refund shall be made of any portion of the tax unless the Board determines as part of its decision that it was paid within three years before the filing of the claim or the filing of the petition, whichever is earlier.

and enlarged after the statute of limitation has expired. "In this behalf, indeed, the prayer for damages is no part of the statement of facts required to constitute a cause of action." 37 C. J. 1079; *Tomson* v. *Iowa State Traveling Men's Association*, 129 N. W. 529, and 132 N. W. 405. An original declaration filed within the statutory period may, if it sets forth a cause of action, later, after the expiration of the period of limitation, be amended to claim increased damages (*Sanders* v. *Allen*, 68 S. E. 1102), and a suit in equity may be converted into an action at law, or vice versa, without sustaining a contention that a new action has been begun after the running of the statute of limitation. *Butler* v. *Secrist*, 138 N. W. 749; *Monahan* v. *Fidelity Mutual Life Insurance Co.*, 90 N. E. 213.

In our opinion the original petition stated cause of action sufficient to toll the statute. It recited, *inter alia*, that the petitioner on December 28, 1936, owned certain shares of stock; that, in accordance with the plan of recapitalization described in the petition, petitioner accepted certain other shares of stock as a credit on dividends accumulated on the stock held; that it was the petitioner's contention that the receipt of the stock as a credit on unpaid accumulated dividends added nothing of value to what the shareholder theretofore had, gave her no additional right or credit to the assets of the corporation, and for that reason the stock received was nontaxable; also that the dividends were paid from capital, so not taxable. The dividends were in fact nontaxable under the decision in *Morainville* v. *Commissioner*, *supra*, involving, it is stipulated, the same issue of stock. The original petition, furthermore, in setting forth the error complained of, recited that the Commissioner contends that no part of the stock received represented a return of capital; and, further, in the statement of facts relied upon, stated that, "if the stock is held to be a taxable dividend," the measure of the amount of dividend is the market or fair value of the shares at the actual date the seller by signature agreed to accept same. Thus it appears that the petitioner in drawing the original petition did have in mind the question as to whether the stock would be held to be a taxable dividend and whether it represented a return of capital. Though it is true that the reference to the return of capital in the assignment of error is a statement of what "the Commissioner contends," nevertheless the whole statement is a part of the section of the petition which alleges the errors relied upon, and the language as to the Commissioner's contention that no part of the dividend represents a return of capital follows the statement that the determination of deficiency "is based upon the following errors." Also, the contention of nontaxability appears in the statement of facts. We think a fair construction of the whole petition requires the conclusion that the contention on the part of the Commissioner is in error, in

spite of the fact that it is also stated that the Commissioner contended the stock received had a market value of $21.25 per share and that the petitioner alleged a value of $20 per share and therefore that no deficiency was due. It fairly appears that, though the petitioner erroneously confined her prayer merely to a quashing, so to speak, of the deficiency, nevertheless the grounds relied upon were not merely the difference between $20 and $21.25, but the allegation that the stock received was nontaxable. No new issue was raised in the amended petition.

We think that such a petition was, under general principles of pleading and limitation of actions, merely amended as to prayer for relief by the amended petition filed later after the statute of limitation had otherwise run. See *American Smelting & Refining Co.*, 44 B. T. A. 131; cf. *Adolph B. Spreckels*, 41 B. T. A. 1204; *Commissioner* v. *Rieck*, 104 Fed. (2d) 294; and *Commissioner* v. *Dallas' Estate*, 110 Fed. (2d) 743.

The respondent contends, however, as we understand him, that the original petition did not state a cause of action because, it is said, it nowhere alleged that the petitioner ever agreed to or did make an exchange of her shares of stock, that it did not appear that the petitioner participated in the entire plan of recapitalization, and that therefore the *Morainville* case, having to do with the plan of recapitalization and exchange of stock, is neither *res adjudicata* nor a precedent in this case. At the time of trial it was agreed between the parties "that the stock involved in this proceeding is identical with the stock involved in the case of" *Morainville* v. *Commissioner, supra*, and later that it was the same issue of stock and that the only question for the Court to determine is whether the petitioner is entitled to a claim for refund, involving the question as to whether the statute has barred her claim. On this agreement no evidence was adduced by the petitioner. We not only construe this agreement as one that the question here is precisely that involved in the *Morainville* case, but a reading of the original petition indicates to us that the petitioner did participate in the plan of recapitalization, and we think the agreement precludes denial thereof. The petitioner obviously so understood it. It is alleged that "The stock dividends were issued by the Heywood-Wakefield Company under a plan of recapitalization." This statement follows immediately one that the petitioner had included in her income tax return for the taxable year as dividend income a stock dividend of 555 shares of stock in Heywood-Wakefield Co. The original petition also recites what the plan of recapitalization provided as to the stock involved; recites that the stock dividend would not be issued until after the second preferred shareholder (which petitioner was alleged to be) had agreed in writing to accept series B first preferred shares on account of dividend arrearages; recites

that "in accordance with the plan of recapitalization" she accepted 555 shares of series B first preferred stock and 75¢ in cash as a credit on accumulated dividends; and recites that the company had no earned surplus, "and consequently the dividends paid in stock were dividends paid from capital and not taxable."

We conclude and hold that the petitioner did state cause of action in her original petition and that the statute of limitation has not run against her prayer for refund or finding of overpayment, so far as concerns the payments made within three years from the date of filing the original petition. Petitioner contends also that the provisions of the Revenue Act of 1942 (section 169) are here applicable and thereunder the statute was tolled from January 17, 1940, upon which date a waiver agreement was signed by petitioner and the Commissioner, extending the time for assessment of income tax to June 30, 1941. If this contention is sound, then the payment made on April 16, 1937, would come within the statute of limitations. In our opinion, however, section 169 of the Revenue Act of 1942 is not applicable. That act provides, section 101, that, except as otherwise expressly provided, amendments made shall as to Title I be applicable only with respect to taxable years beginning after December 31, 1941. We find nothing in section 169, covering the subject of statute of limitations on refunds and credits, to apply the section to the year 1936, and hold that section 322 (d) of the Revenue Act of 1936, above quoted, applies.

Petitioner also argues that the execution of the waiver agreement on January 13, 1940, also the issuance of the deficiency notice on February 13, 1940, suspended the operation of the statute of limitations. In this the petitioner is in error. The statute of limitation is computed from the filing of the petition (in the absence of a claim for refund, which in this matter appears not filed). For the present purpose, neither the waiver nor the mailing of the deficiency notice is of effect.

We therefore hold that the payment of $178.98 paid on April 16, 1937, more than three years prior to the filing of the original petition herein, is barred by the statute of limitation.

*Decision will be entered under Rule 50.*